### VON BANK v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5156.

1. ARMY AND NAVY ⊙⟹40—ESPIONAGE ACT—CONSTRUCTION—"WILLFULLY."

In Espionage Act June 15, 1917, tit. 1, § 3, making it an offense to "willfully cause or attempt to cause insubordination, disloyalty, mutiny or refusal of duty in the military or naval forces of the United States," the word "willfully" means "intentionally" or "with the purpose of."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willfully.]

2. ARMY AND NAVY ⊙⟹40—ESPIONAGE ACT—ATTEMPT TO CAUSE INSUBORDINATION, ETC.

A statement by an officer of a school district, that he "would rather see a pair of old trousers hanging over the schoolhouse than the United States flag," held, under the circumstances in which it was made, not an offense under the Espionage Act, as a willful attempt to cause insubordination, etc., in the military or naval forces.

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Criminal prosecution by the United States against Henry Von Bank. Judgment of conviction, and defendant brings error. Reversed.

A. W. Fowler, of Fargo, N. D., for plaintiff in error.

Melvin A. Hildreth, U. S. Atty., of Fargo, N. D. (John Carmody, Asst. U. S. Atty., of Fargo, N. D., on the brief), for the United States.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge. Von Bank was convicted and sentenced for a violation of section 3, title 1, Act of Congress approved June 15, 1917, c. 30, 40 Stat. 217. The charge against him was that on December 15, 1917, at or near Buffalo, in the county of Cass, district of North Dakota, he had willfully caused and attempted to cause, insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, the United States then being at war with the Imperial German Government, by refusing as president of the school board of district No. 79, to put the flag of the United States upon the schoolhouse in said district, and stating that he would just as soon see a pair of old trousers hanging over the schoolhouse

---

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as the United States flag. At the close of all the evidence, counsel for the defendant moved for a directed verdict in his favor, which was denied. This ruling is assigned as error.

There was evidence tending to show that the defendant was a naturalized citizen of the United States, having been born in the Grand Duchy of Luxemburg; that he was a farmer living in the county of Cass, North Dakota, and at the time of the commission of the alleged offense was president of the district school board, and said board had neglected or refused to purchase a flag of the United States and display the same in seasonable weather upon the district schoolhouse or upon a flagstaff upon the school grounds during school hours of each day's session of school as the law provided. At the county teachers' institute it appeared that the schoolhouse of district No. 79 had no flag. Knowledge that there was criticism for the failure to provide a flag came to the defendant, and on the date mentioned in the indictment he visited the schoolhouse while school was in session, and in a conversation had in the entry of the schoolhouse, at which the defendant and the school-teacher were alone present, the defendant stated "he would rather see a pair of old trousers hanging over the schoolhouse than the United States flag." Later, when asked by the county superintendent, Mr. Riley, as to whether he had used this language, he replied, "Yes; I said so, and why not?"

At the time the defendant admitted that he had used the words set forth in the indictment, Mr. W. A. Landblom, assistant superintendent of public instruction, was present and was a member of class 4 of the selective draft. There was no evidence that the defendant spoke the language quoted for the purpose of causing or attempting to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, except the language itself. The law in express terms confines the organizations to be acted upon to the military or naval forces of the United States, and the effect of the acts or declarations of any person upon such organization is termed insubordination, disloyalty, mutiny, or refusal of duty, terms which, with the exception of disloyalty, are applicable to persons subject to the command of superior authority in an organized service.

[1] The word "willfully" has been given different shades of meaning in different statutes. In the law under consideration we think it means "intentionally," or "with the purpose of." The fact that no flag had been displayed upon the schoolhouse can have very little influence in the present controversy, as that condition had existed for years before June 15, 1917, and it was the district board's duty to display the flag, and not particularly that of the defendant. It is contended by counsel for the government that the jury had a right to find or infer from the language used that the defendant intended to cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, upon the well-known principle that every man is presumed to intend the necessary and legitimate consequence of what he knowingly does or says. The jury, however, had no right to find a criminal intent,

unless such intent was the necessary and legitimate consequence of the words spoken. A jury has no more right to draw an inference from facts that do not necessarily and legitimately authorize such inference than to find any other fact without evidence.

[2] The question now presented is: Would the words spoken, under the circumstances attending their utterance, necessarily and legitimately cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States? Assuming the military or naval forces to be constituted of patriotic citizens, which of course is a legitimate assumption, we think the language used by the defendant with reference to the flag, when heard by them, would cause the flame of patriotism to burn the brighter in indignant protest, rather than cause insubordination, disloyalty, mutiny, or refusal of duty.

It is not the language of the wily agitator or propagandist. The language used by the defendant is unpatriotic and offensive to any one who appreciates what the flag has always and still stands for; but if this be a government of laws, and not of men, the defendant should stand unprejudiced by the passions of the times when charged with the commission of crime. It would seem that Congress passed the law of May 16, 1918 (chapter 75), for the purpose of punishing the use of unpatriotic language, as the passage thereof would not have been necessary if it was the opinion of Congress that the present law included merely scurrilous language with reference to the flag. We are of the opinion, therefore, that there was no evidence from which the jury had the right to find or infer that the defendant used the language quoted above with the intent to cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States. So far as the attack upon the indictment is concerned, we think that, as the words spoken are alleged to have been uttered willfully, the indictment is sufficient; the proof to sustain the fact that the words were spoken willfully for the purpose alleged to be supplied at the trial.

For the error in refusing to direct a verdict, the judgment below is reversed, and a new trial ordered.