### GRUBL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1920.)

No. 5337.

1. War ⟐4—Declaration held not admissible to show intent to cause insubordination.

In prosecution for violating Espionage Act June 15, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), by a statement, with intent to cause disloyalty in the military forces, that those sent overseas would never return, a declaration by accused, when he learned that some of his cattle had been impounded by the authorities at a military post, that he wished some one would blow up the post, was not admissible to show the intent with which he made the remark on which the prosecution was based.

2. War ⟐4—If statement charged does not reasonably disclose intent to cause insubordination, indictment is insufficient.

Where an indictment for violation of the Espionage Act sets forth a statement alleged to have been made with intent to cause insubordination in the military forces, the indictment is sufficient, if the statement is such that intelligent men would reasonably deduce from it the conclusion that defendant intended to cause insubordination; but if the statements, considered in the light of the time and circumstances of their utterance, were not reasonably susceptible to an inference of such intent, the indictment is demurrable.

3. War ⟐4—Only circumstances known to all held to be considered in determining sufficiency of Espionage Act indictment.

Where an indictment for violation of the Espionage Act by making a statement intended to cause insubordination in the military forces contained no averments as to the time, place, or circumstances under which it was made, except that it was publicly made in a certain county to two named persons and to other persons unknown, the sufficiency of the indictment must be judged by the statement, and the time and circumstances of its utterance, of which all have common knowledge.

4. War ⟐4—In testing Espionage Act indictment, presumption of innocence holds.

In determining the sufficiency of an indictment for violation of the Espionage Act, in the face of a demurrer, the presumption that accused is innocent until he is proved beyond reasonable doubt to have been guilty is in full force.

5. War ⟐4—Statement held not to show intent to cause insubordination.

A statement made in 1917, when the armies of the United States were not yet engaged in action and the outcome of the war appeared doubtful, that none of the men sent overseas would return, and that Germany could not be beaten, does not sustain the inference that it was uttered with intent to cause insubordination in military service.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. War ⟨⟩4—Evidence held not to show intent to cause insubordination.**

Evidence showing the circumstances under which defendant stated that men sent overseas would never return, and that Germany could not be defeated, and showing defendant to be a man with limited knowledge of English and of current events, *held* not to show an intent by his statement to cause insubordination in the military forces.

Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Frank Grubl was convicted of violating the Espionage Act, and he brings error. Reversed and remanded, with instructions to discharge defendant.

W. G. Rice, of Deadwood, S. D., and Byron S. Payne, of Pierre, S. D. (John T. Milck, of Sturgis, S. D., on the brief), for plaintiff in error.

E. W. Fiske, U. S. Atty., of Sioux Falls, S. D. (Robert P. Stewart, U. S. Atty., of Deadwood, S. D., and George Philip, Asst. U. S. Atty., of Rapid City, S. D., on the brief), for the United States.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. The defendant below complains of errors in the trial of the charges in an indictment against him for violations of section 3 of the Espionage Act of June 15, 1917, 40 Stat. c. 30, p. 219 (U. S. Compiled Statutes 1918, Comp. St. Ann. Supp. 1919, § 10212c), in that about October 8, 1917, in Meade county, S. D., he publicly stated and said to Gregor Cruickshank, Roderick A. Cruickshank, and to other persons to the grand jurors unknown, these words:

"So your boy Edwin has gone to war with the rest of them. He will never come back. Most of them that go (meaning the American soldiers) will never get there, and if they do get there they will all be killed. You will never see him again, for he will never come back. America can never whip Germany. I know personally that Germany will never be whipped, for I have a friend in Belle Fourche right from Germany who told me all about it, and I know that every one that goes over there will be killed, and none of them will ever come back. Your boy will be killed with the rest of them. Germany will never be whipped by America or any other nation."

The indictment contained three counts. In the first the charge was that the defendant willfully made the false statements with intent to promote the success of the Imperial German government, the enemy of the United States; in the second count the charge was that he willfully caused and attempted to cause disloyalty, insubordination, mutiny, and refusal of duty in the military forces of the United States, to the injury of the United States, by the making of these statements; and in the third count the charge was that he willfully obstructed the recruiting and enlistment service of the United States by uttering these sayings. A demurrer was interposed to each count of the indictment. The trial court sustained it to the first count, and overruled it to the second and third counts. Those counts were tried together.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

During the trial the court, over the objections and exceptions of the defendant, permitted the government to prove, for the purpose of showing the defendant's intent in making the statements charged in the indictment, that one day in October, 1917, the defendant, who owned land and permitted his cattle to graze near the military post and fortress of Ft. Meade, while near the post looking for his cattle, some of which the authorities at Ft. Meade had previously impounded, asked a boy 17 years of age if he had seen the cattle; the boy answered that he had not, and the defendant then said he thought that they had been impounded there, that he was going to see, and that he went down to the pound, and said as he left, that he wished some one would blow up the whole post. The rulings which have been recited, and many others, are challenged as error.

[1] Clearly the defendant's remark to the boy, that he wished some one would blow up the post, at the time when the fact was that he knew the authorities had been impounding his cattle and he believed that they had done so again, as he subsequently learned the fact was, was not a statement susceptible to the inference that it was made with the intent to cause insubordination, disloyalty, mutiny, or disregard of duty in the military forces of the United States and that it was not similar to the statements charged in the indictment. It was but the choleric expression of the defendant's annoyance on account of the impounding of his cattle, and it was incompetent to prove any of the evil intents charged in the indictment.

[2] Was there error in the overruling of the demurrer to the second count in the indictment? If the statements there charged, considered in the light of the time and circumstances of their utterance, were such that they were reasonably calculated to cause the effects charged, if they were such that intelligent and impartial men in the exercise of a sound judgment would reasonably deduce from them the conclusion that the defendant thereby intended to cause or to attempt to cause disloyalty, insubordination, mutiny, or refusal of duty in the military forces of the United States, they were sufficient in their terms to sustain the indictment, and to require the court to send the case to a trial by a jury. If, on the other hand, the statements charged, when considered in the light of the time and circumstances of their utterance, were not reasonably susceptible to an inference of such an intent on the part of the defendant, the demurrer to this count of the indictment should have been sustained.

[3] There is no averment in the indictment of time, place, or circumstance under which the alleged utterance was made, except that the defendant publicly made it in Meade county to Gregor Cruickshank and Roderick Cruickshank, and to other persons unknown, and the mere jurisdictional allegation that he made it on or about October 8, 1917, an averment which permitted evidence that the statements were made at any time between the passage of the Espionage Act and the filing of the indictment. The indictment contains no averment that the statements were made in any public address, or in any printed or written circular, or argument in support or advocacy of disloyalty or disregard of duty, much less in support of insubordi-

nation or mutiny, by any member of the military forces of the United States. The sufficiency of the indictment, therefore, must be judged by the words of the statements alleged, and the time and circumstances of their averred utterances of which all have common knowledge.

[4, 5] In the determination of the sufficiency of the indictment in the face of a demurrer, the legal presumption that the accused is innocent until he is proved beyond reasonable doubt to have been guilty is in full force. The time when these statements are charged to have been made was in October, 1917, a time when the power of the United States had not been seriously felt in the war, when her armies were not fighting and her navies were ineffective in European waters, a time when the ships of the Germans were sinking the ships of the Allies more rapidly than they could restore them, when the armies of the Allies had failed for more than three years to release France from the grasp of Germany, and when the armies of Germany threatened the Channel ports. It was at such a time and under such circumstances that the defendant made the statements charged. They contained no word of opposition to or bitterness against the United States, its government, the administration of the government, or the prosecution of the war. They are but expressions of a discouraged and despondent man, who saw no hope of the determination of the war, and was bemoaning the loss of the young men of this nation, who were going to Europe, because he had been led to believe they would never return. The more this indictment, and the time and circumstances under which the alleged statements in it were made, have been considered, the more irresistibly has the conclusion been forced upon the mind that they were not susceptible to the inference that the defendant made them with the evil intents charged in the second count of the indictment, and the conclusion is that the demurrer to that count should have been sustained.

[6] The evidence at the trial has been carefully reviewed. It furnishes a clearer portrayal of the time and circumstances under which the defendant made the statements than does the indictment. It portrays this condition. The defendant was born in Bavaria. He came to the United States when he was 30 years of age; he was naturalized 25 years before the trial. He settled in the Black Hills, an uninhabited portion of the country, about 1887, and there he has lived ever since, engaged in the raising and feeding of cattle and horses. He had lived in a sparsely settled country, and had a very limited knowledge of the progress of the war, gained largely from the talk of his neighbors. He had accumulated about 700 acres of land and a large stock of cattle and horses, and his life and his thoughts had been devoted to the acquisition and care of this property. Gregor Cruickshank and the defendant had been acquainted and had been neighbors for 15 years. Cruickshank's son Edwin was in the army of the United States, and his son Roderick A. Cruickshank was about 27 years of age and was living with him. This son did not testify, because at the time of the trial he was in the army. Gregor Cruickshank testified that the defendant came to his orchard on October 8, 1917, and bought from him the apples of two trees, and after he had gather-

ed them gave him a bill in payment; that he could not make the change and they went into his house, so that he could write him a check therefor; that after he had written the check the defendant made the statements alleged in the indictment, in presence of himself and Roderick; that the utterance of these statements made him angry, and they shoved him out. There was no testimony regarding this conversation, except that of Gregor Cruickshank and that of the defendant. The latter's account of it was:

That, after they were seated in the house and he had received a check, Gregor Cruickshank said, " 'Grubl, what do you think about the war?' 'Well,' I said, 'pretty awful, the way it looks now.' 'Did your brother gone already?' 'Yes, he went the other day.' I said, 'The way things looks, chances you probably never see 'him any more.' Q. Then what was said and done? A. Well, then he cuss; he don't like that. I don't mean anything by that—I mean it as a friend. The way some neighbors talking, I don't mean anything by it at all. Then Mr. Cruickshank he come from the table and he cuss me, and he said: 'You know the time you went down to Omaha, what I told you. The Pope he is the cause of the war.' I said: 'I told you at the time he is not. Since he is elected, he is working for peace all the time.' He just come on, and 'You are in favor of Germany' he said. 'Why I shouldn't?' 'I got my property and my home here.' 'Why I shouldn't.' 'If there is anybody come in this country, I am 62 years old. I give my boy when they decide. I am ready any time to enlist, if anybody comes in this country.' He was not convinced, and I leave the house."

There was no denial at the trial of the defendant's testimony about the controversy between him and Cruickshank concerning the Pope and the cause of the war, and there was no evidence that anybody but Cruickshank, his son Roderick, and the defendant were present at the conversation. The excerpt which has been taken from the testimony of the defendant, and his other testimony, disclosed the difficulty and awkwardness with which he used the English language, the danger of a misconstruction of his sayings, and they portray a sturdy ranchman, with a very limited knowledge of any affairs or current events not affecting his stock business. There was evidence introduced to show the intent with which he uttered the statements in the indictment. It has been carefully examined and considered. It contains no proof of any attempt at any propaganda, no publication of any printed or written matter, no endeavor by public address or persistent argument to cause any of the evils of disloyalty, insubordination, or mutiny in the military forces of the United States, nothing but casual conversations of the defendant with his neighbors, in which he repeated his despondent views of the progress of the war and disclosed his lack of correct information concerning it.

The jury, by its verdict of not guilty on the third count of this indictment, found from all the evidence in this record that the defendant was not, by uttering the statements charged in the indictment at the same time and under the same circumstances charged in the second count, guilty of intentionally obstructing the recruiting and enlistment service of the United States, and repeated readings of all the evidence in this case and thoughtful meditation thereon have convinced that, when the time and circumstances under which he uttered the statements in issue are fairly taken into consideration, there was no

substantial evidence in this case that the defendant made these state-
ments with any intent to cause disloyalty, insubordination, mutiny,
or refusal of duty in the military forces of the United States.   Von
Bank v. United States, 253 Fed. 641, 642, 165 C. C. A. 267, 268; Doll
v. United States, 253 Fed. 646, 165 C. C. A. 272; Wolf v. United
States, 259 Fed. 388, —— C. C. A. —— (opinion Eighth Circuit, filed
May 13, 1919); Fontana v. United States, 262 Fed. 283, —— C. C. A.
—— (opinion Eighth Circuit, filed December 8, 1919).

The judgment below must be reversed, and the case remanded to
the court below, with instructions to discharge the defendant below.

STONE, Circuit Judge, dissents.